# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE LOPEZ-HENRIQUEZ, | ) Case No. 2:22-cv-04267-WJM-JSA |
| | ) |
| *Plaintiff,* | ) **BRIEF IN SUPPORT OF MOTION** |
| v. | ) Motion Return Date: |
| | ) |
| DIAMOND FOUNDRY, INC., | ) September 6, 2022 |
| | ) |
| *Defendant.* | ) |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ...................................................................................... 1

III. THE COURT LACKS SUBJECT-MATTER JURISDICTION ........................................ 2

    A. Legal Standard ................................................................................................... 2

    B. Argument ........................................................................................................... 3

IV. THE COMPLAINT FAILS TO STATE A CLAIM ............................................................ 4

    A. Legal Standard ................................................................................................... 4

    B. Argument ........................................................................................................... 5

        1. Plaintiff's breach of contract claim is governed by California law ............................ 5

        2. Plaintiff's breach of contract claim is time-barred under California law .................. 6

        3. Plaintiff's declaratory judgment claim is duplicative of the breach of contract claim ……………………………………………………………………………….7

V. THE COMPLAINT IS SUBJECT TO AN ARBITRATION CLAUSE ............................... 8

    A. Legal Standard ................................................................................................... 8

    B. Argument ........................................................................................................... 9

VI. CONCLUSION ............................................................................................................ 11

TABLE OF AUTHORITIES

**Cases**                                                 **Pages**

*Arafa v. Health Express Corp.*,

   233 A.3d 495 (N.J. 2020) .................................................................................................. 9

*AV Design Servs., LLC. v. Durant*,

   No. CV 19-8688 (RBK/KMW), 2021 WL 1186842, at *12–13 (D.N.J. Mar. 30, 2021) .......... 7

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544 (2007) .......................................................................................................... 4

*Brown v. Brown*,

   No. CV 13–03318 SI, 2013 WL 5947032, at *4 (N.D.Cal. Nov. 5, 2013) ................................ 6

*Buschman v. Anesthesia Bus. Consultants LLC*,

   42 F. Supp. 3d 1244 (N.D. Cal. 2014) ................................................................................ 6

*Carrow v. Fedex Ground Package Sys., Inc.*,

   No. 16-3026 (RBK/JS), 2017 WL 1217119, at *3 (D.N.J. Mar. 30, 2017) .............................. 5

*CDF Firefighters v. Maldonado,*

   158 Cal. App. 4th 1226 (2008) ........................................................................................ 6

*DiValerio v. Best Care Lab'y, LLC*,

   No. CV 20-17268 (FLW), 2021 WL 4704963, at *3 (D.N.J. Oct. 8, 2021) ............................ 8

*Federico v. Home Depot,*

   507 F.3d 194 (3d Cir. 2007) .............................................................................................. 2


*Fowler v. UPMC Shadyside*,

    578 F.3d 203 (3d Cir. 2009) ................................................................................ 4

*Fox v. Ethicon Endo–Surgery, Inc.*,

    35 Cal.4th 797 (2005) ........................................................................................ 6

*Gov't Emps. Ins. Co. v. Elkholy*,

    No. CV2116255MASDEA, 2022 WL 2373917, at *4 (D.N.J. June 30, 2022) ........................ 8

*Instructional Sys., Inc. v. Computer Curriculum Corp.*,

    614 A.2d 124 (N.J. 1992) .................................................................................... 5

*Kernahan v. Home Warranty Adm'r of Fl., Inc.*,

    199 A.3d 766 (N.J. 2019) .................................................................................... 9

*Marchi v. Nationstar Mortg., LLC ex rel. Freddie Mac*,

    No. 16-6044 (JLL), 2017 WL 4407933, at *1 (D.N.J. Oct. 4, 2017) .................... 2-3

*McCleary v. City of Wildwood*,

    No. CV 09-2876 (RMB), 2009 WL 10728089, at *1 (D.N.J. June 16, 2009) ........................ 2

*North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*,

    730 A.2d 843, (N.J. 1999) ................................................................................... 5

*Penn v. Wal-Mart Stores, Inc.*,

    116 F. Supp. 2d 557 (D.N.J. 2000) ..................................................................... 3

*Phillips v. Cty. of Allegheny*,

    515 F.3d 224 (3d Cir. 2008) ................................................................................ 4

*Portillo v. Nat'l Freight, Inc.*,

    323 F. Supp. 3d 646 (D.N.J. 2018) ..................................................................... 5

*Russ v. Unum Life Ins. Co.*,

    442 F. Supp. 2d 193, 197 (D.N.J. 2006) ................................................................................... 3

*Samuel-Bassett v. Kia Motors America, Inc.*,

    357 F.3d 392 (3d Cir. 2004)..................................................................................................... 3

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,

    303 U.S. 283, 289 (1938).......................................................................................................... 3

**Statutes**

28 U.S.C. § 1332(a) ........................................................................................................................ 2

9 U.S.C. § 4.................................................................................................................................... 8

Cal. Code Civ. Proc. § 337 ............................................................................................................ 6

I.      INTRODUCTION

Over six years after the conclusion of his thirty-two-day employment with Defendant Diamond Foundry, Inc. ("Defendant"), Plaintiff Jorge Lopez-Henriquez ("Plaintiff") brings this action in federal court in order to recover less than $75,000.00 of stock from Defendant. Without a loan agreement or evidence of payment, Plaintiff did not purchase Defendant's stock, and is not one of Defendant's shareholders. Even taking Plaintiff's grossly distorted version of the facts as they are presented in the Complaint at face value, the Complaint is defective. First, the Court lacks subject-matter jurisdiction because it is clear from the face of the Complaint that the amount in controversy is nowhere near the jurisdictional minimum of $75,000.00. Second, the Complaint fails to state a claim because Plaintiff's breach of contract claim is barred by California's statute of limitations, the governing law under the agreement at issue, while the declaratory judgment claim should be dismissed as duplicative of the breach of contract claim. Third, Plaintiff's claim arises out of his employment with Defendant, and Plaintiff is therefore required to arbitrate this dispute under the terms of his Employment Agreement with Defendant.

II.     FACTUAL BACKGROUND[1]

Plaintiff worked for Defendant as its Vice President, Software from February 22, 2016 until March 25, 2016. Compl. ¶ 6. While employed by Defendant, Plaintiff and Defendant entered into a Restricted Stock Purchase Agreement ("RSPA"), under which Plaintiff was awarded 150,000 shares of Defendant's stock that vested on the following schedule: 1/48th upon execution, and 1/48th every month of employment. *Id.* ¶ 7. The RSPA, which Plaintiff attached to the Complaint as Exhibit A, specified that "the purchase and sale of the Shares shall occur at a

---

[1] Defendant accepts the truth of the allegations in the Complaint for the purposes of this Motion only.

1

closing . . . to be held on the date first set forth above, or any other time mutually agreed upon by [Defendant] and [Plaintiff]." *Id.*, Exh. A § 2. Plaintiff alleges that he owns 6250 shares of Defendant's stock. *Id.* ¶ 8. Plaintiff first requested delivery of the shares in June 2021, but Defendant denied Plaintiff's request, citing a loan agreement on which Plaintiff had defaulted. *Id.* ¶ 11. When Plaintiff again requested delivery of the shares through counsel in May 2022, he was met with the same response. *Id.* ¶ 12. According to Plaintiff, he never entered into a loan agreement with Defendant. *Id.* ¶ 13.

### III. THE COURT LACKS SUBJECT-MATTER JURISDICTION

**A. Legal Standard**

"The district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" where the diversity of citizenship requirement is satisfied. 28 U.S.C. § 1332(a). "A Court is without subject matter jurisdiction if a plaintiff fails to allege the requisite amount in controversy." *Marchi v. Nationstar Mortg., LLC ex rel. Freddie Mac*, No. 16-6044 (JLL), 2017 WL 4407933, at *1 (D.N.J. Oct. 4, 2017) (citation omitted). Plaintiff, as "the part[y] seeking to bring this matter before the Court, bear[s] the burden of proving that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)." *McCleary v. City of Wildwood*, No. CV 09-2876 (RMB), 2009 WL 10728089, at *1 (D.N.J. June 16, 2009) (citations omitted). "Factual questions or disputes involving the amount in controversy are to be resolved by the Court under the preponderance of the evidence standard." *Id.* (citing Federico v. Home Depot, 507 F.3d 188, 194 (3d Cir. 2007)). "In other words, a plaintiff asserting federal jurisdiction must prove to a reasonable probability that jurisdiction exists." *Id.*

///

2

### B. Argument

It is apparent from the face of the Complaint that Plaintiff comes nowhere clear to meeting his burden of demonstrating an amount in controversy in excess of $75,000.00. The Court's determination of the amount in controversy "begins with a reading of the complaint[.]" *Samuel-Bassett v. Kia Motors America, Inc.*, 357 F.3d 392, 398 (3d Cir. 2004). "The Court must look to the face of the pleadings and the proofs to determine whether the plaintiff meets this amount by a 'legal certainty.'" *Marchi*, 2017 WL 4407933, at *1 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "If the complaint is open-ended and does not allege a specific amount, the court must perform an independent appraisal of the value of the claim by looking at the petition for removal [in removal jurisdiction cases] or any other relevant evidence." *Russ v. Unum Life Ins. Co.*, 442 F. Supp. 2d 193, 197 (D.N.J. 2006) (citing *Penn v. Wal-Mart Stores, Inc.*, 116 F. Supp. 2d 557, 561 (D.N.J. 2000)).

The Complaint here contains a boilerplate allegation that the amount in controversy "exceeds $75,000.00, exclusive of interest and costs." Compl. ¶ 3. Yet, the Complaint contains no factual allegations that corroborate this allegation. While the basis for Plaintiff's claim is that Defendant failed to deliver 6250 shares of its stock, Plaintiff does not allege the present value of these shares. Nor does Plaintiff give the Defendant and the Court any clue as to the monetary value of the (unfounded and speculative) damages for "lost profits" and the "cost of any increased tax liabilities and interest" to which Plaintiff alleges he is entitled. Compl. at 4.

The only indication Plaintiff has provided the Court as to the value of the shares at issue is the RSPA itself, which Plaintiff attached to the Complaint. (Defendant is not a publicly traded corporation. *See* Defendant's Corporate Disclosure Statement, ECF No. 13.) The RSPA identifies a price per share of $.196195, and a total purchase price of $29,429.25 for 150,000

3

shares. Compl., Exh. A § 1. Based on the price per share stated in the RSPA, the value of the 6250 shares at issue is $1226.22. This calculation remains constant if the Court were to calculate a proportionate share of the total purchase price based on 6250 shares, relative to the total shares of 150,000. There are no factual allegations in the Complaint from which the Court could devise an alternative amount in controversy, let alone one in excess of $75,000.00.[2]

Given Plaintiff's complete failure to satisfy the amount in controversy requirement, the Court lacks subject-matter jurisdiction over this matter and should dismiss the Complaint accordingly.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] The Court should reject any request on Plaintiff's part to seek leave to amend to allege facts supporting an amount in controversy in excess of $75,000.00. In April 2022, Defendant valued its shares at $9.58 as part of its Internal Revenue Code section 409A valuation. Even based on this significantly higher value, the amount in controversy would be $59,875.00—still over $15,000.00 too low. The value of the shares Plaintiff alleges he owns never exceeded $75,000.00 based on any section 409A valuation Defendant has ever received.

B. Argument

Plaintiff's breach of contract claim is barred by California's statute of limitations, which applies here pursuant to the RSPA's choice-of-law provision. Plaintiff's standalone declaratory relief claim fails because it is duplicative of Plaintiff's breach of contract claim.

1. Plaintiff's breach of contract claim is governed by California law

As a preliminary matter, the Court must apply the substantive law of California to Plaintiff's breach of contract claim. The RSPA states: "This Agreement shall be governed by the internal substantive laws, but not the choice of law rules, of California." Compl., Exh. A § 9(h). "New Jersey courts will "generally uphold [] choice-of-law clauses, so long as the clause 'does not violate New Jersey's public policy.'" *Carrow v. Fedex Ground Package Sys., Inc.*, No. 16-3026 (RBK/JS), 2017 WL 1217119, at *3 (D.N.J. Mar. 30, 2017) (quoting *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847 (N.J. 1999)).

Defendant's principal place of business is in San Francisco, California. Compl. ¶ 2. There is therefore a clear substantial relationship between the chosen state on the one hand, and the parties and the transaction, on the other hand, and enforcing the choice-of-law provision to which the parties agreed would not offend New Jersey's public policy. *See Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 651–52 (D.N.J. 2018) (explaining that New Jersey courts follow Section 187 of the Restatement (Second) of Conflict of Laws and enforce choice-of-law provisions unless there is no substantial relationship or enforcement of the choice-of law provision would be "contrary to a fundamental policy of a state which has a materially greater interest than the chosen state" (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992))).

### 2. Plaintiff's breach of contract claim is time-barred under California law

"Under California law, breach of contract actions based on a written contract are governed by a four-year statute of limitations." *Buschman v. Anesthesia Bus. Consultants LLC*, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citing Cal. Code Civ. Proc. § 337)). "Generally, a 'cause of action for breach of contract accrues at the time of breach, which then starts the limitations period running.'" *Id.* (quoting *Brown v. Brown,* No. CV 13–03318 SI, 2013 WL 5947032, at *4 (N.D.Cal. Nov. 5, 2013)). "California courts have stated that an action accrues 'at the time when the cause of action is complete with *all* of its elements.'" *Id.* (quoting *Fox v. Ethicon Endo–Surgery, Inc.,* 35 Cal.4th 797, 27 2005)). "The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado,* 158 Cal. App. 4th 1226, 1239 (2008) (citation omitted).

Accepting Plaintiff's recitation of the facts as true, Defendant was supposed to issue 6250 shares of its stock to Plaintiff, but failed to do so. Under the RSPA, which again is attached to the Complaint, "the purchase and sale of the Shares shall occur at a closing . . . to be held on the date first set forth above, or any other time mutually agreed upon by the Company and the Purchaser." Compl., Exh. A § 2. The RSPA is dated February 21, 2016. *Id.* at 1. Thus, any purported breach must have occurred when Defendant did not issue the shares at closing. If Defendant did indeed fail to provide the shares at closing, Plaintiff's breach of contract claim would have accrued on the closing date. Insofar as Plaintiff's breach of contract claim accrued at closing, the statute of limitations elapsed on February 21, 2020.

6

Plaintiff tries to plead around the statute of limitations by pretending the closing date term of the contract does not exist, focusing only on a separate term regarding "delivery" of the shares. Compl. ¶¶ 10–11. Under Plaintiff's theory, the breach of contract claim accrued when Plaintiff requested delivery of the stock in June 2021. Plaintiff's purported interpretation of the contract lacks merit. First, the basis of Plaintiff's claim is that Defendant was supposed to sell certain shares to Plaintiff, but did not do so. While Plaintiff (curiously) waited five years to request delivery, Defendant would nonetheless have been required to complete the transaction at closing if its performance was not excused. The breach of contract claim therefore accrued when the transaction failed to close on the designated date. Plaintiff tacitly acknowledges the importance of the closing date in his prayer for relief, where he seeks an order compelling Defendant to schedule and attend the closing. If the Court were to credit Plaintiff's theory, Plaintiff could theoretically have done nothing for fifty years, and then requested delivery of the shares, thus starting the four-year clock. This outlandish result would run wholly contrary to the purpose of statutes of limitations, and the Court should not countenance it.

3. Plaintiff's declaratory judgment claim is duplicative of the breach of contract claim

Plaintiff's declaratory judgment claim fails to state a claim because it is duplicative of his breach of contract claim. "Courts routinely dismiss declaratory judgment claims when they are duplicative of breach of contract claims." *AV Design Servs., LLC. v. Durant*, No. CV 19-8688 (RBK/KMW), 2021 WL 1186842, at *12–13 (D.N.J. Mar. 30, 2021) (collecting cases). Specifically, dismissal of a declaratory judgment claim is proper where "adjudication of the breach of contract claim will . . . resolve the same issue." *Id.* at *13.

Plaintiff seeks a declaratory judgment finding that Plaintiff is entitled to 6250 shares of Defendant's stock. Compl. at 4. Yet, presumably as part of his breach of contract claim, Defendant prays that the Court order Defendant to schedule and attend closing, and deliver the 6250 shares to Plaintiff. Thus, Plaintiff's declaratory judgment claim is based on the exact same issue presented in Plaintiff's breach of contract claim, that is, whether Defendant must issue 6250 shares of its stock to Plaintiff. The Court should therefore dismiss the declaratory judgment claim as duplicative of the breach of contract claim.

## V. THE COMPLAINT IS SUBJECT TO AN ARBITRATION CLAUSE

In the event that the Court determines that the Complaint states a claim over which it has jurisdiction, the Court should compel arbitration.

### A. Legal Standard

Under the Federal Arbitration Act,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "When parties seek to enforce an arbitration agreement, they may request from the court 'an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Gov't Emps. Ins. Co. v. Elkholy*, No. CV2116255MASDEA, 2022 WL 2373917, at *4 (D.N.J. June 30, 2022) (quoting 9 U.S.C. § 4). Following a party's motion to compel arbitration, the court must answer two questions: "(1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement." *DiValerio v. Best Care Lab'y, LLC*, No. CV 20-17268 (FLW), 2021 WL 4704963, at *3 (D.N.J. Oct. 8, 2021) (citation omitted). As the arbitrability of this dispute is

8

not apparent from the face of the Complaint, the Court should apply the Federal Rule of Civil Procedure 56 standard in determining whether the Complaint is subject to a valid arbitration agreement. *See Elkholy*, 2022 WL 2373917, at *4.

### B. Argument

Plaintiff's claims against Defendant are covered by an arbitration agreement between the parties. When Plaintiff began his employment with Defendant, both parties signed an Employment Agreement that contained the following arbitration clause:

> In the event of any dispute or claim relating to or arising out of our relationship, the termination of that relationship, or this agreement (including, but not limited to, any claims of wrongful termination, breach of contract or age, sex, race, disability or other discrimination or harassment), you and the Company agree that all such disputes shall be fully and finally resolved by binding arbitration conducted by the American Arbitration Association in Santa Clara County, California, with the arbitrator exercising all powers and remedies of a judge. By signing this agreement you and the Company waive your rights to have disputes tried by a judge or a jury. However, we agree that this arbitration provision shall not apply to any disputes or claims relating to or arising out of breach or alleged breach of your Proprietary Information Agreement or Consulting Agreement with the Company.

*See* Declaration of R. Martin Roscheisen ("Roscheisen Decl."), Exh. 1.

First, this arbitration agreement is valid and enforceable. When "determining whether to enforce an arbitration agreement, 'a court's initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is the product of mutual assent, as determined under customary principles of contract law.'" *Arafa v. Health Express Corp.*, 233 A.3d 495, 508–09 (N.J. 2020) (quoting *Kernahan v. Home Warranty Adm'r of Fl., Inc.*, 199 A.3d 766 (N.J. 2019)). Plaintiff's Employment Agreement is signed by both parties, and there is no indication that Plaintiff did not assent to its terms.

9

Second, the arbitration agreement in the Employment Agreement covers the claims Plaintiff asserted in this action. The Employment Agreement makes clear that it covers "any dispute or claim relating to or arising out of" Plaintiff's employment, and specifically includes breach of contract claims. Roscheisen Decl., Exh. 1. The Employment Agreement specifically excludes claims arising out of Plaintiff's Proprietary Information Agreement and Consulting Agreement, thereby indicating that other agreements between the parties (like the RSPA) *are* subject to the arbitration agreement. The RSPA further references Plaintiff's status as an employee, thus confirming that the RSPA arises out of Plaintiff's employment relationship with Defendant, and is hence subject to the arbitration agreement in the Employment Agreement. *See* Compl., Exh. A § 4(a) ("So long as the Service Provider's continuous status as employee or consultant has not yet terminated, an additional one forty-eighth (1/48) of the Shares shall be released from the Repurchase Option on the corresponding day of each month thereafter[.]").

Plaintiff entered into a valid arbitration agreement that covers breach of contract claims arising out his employment, which includes his claim for breach of the RSPA. To the extent any of Plaintiff's claims survive, the Court should compel Plaintiff to arbitrate them.

[*continued on following page.*]

## VI. CONCLUSION

Based on the foregoing arguments, Defendant Diamond Foundry, Inc. respectfully requests that this Honorable Court dismiss Plaintiff Jorge Lopez-Henriquez's Complaint for lack of subject-matter jurisdiction. In the alternative, the Court should dismiss the Complaint for failure to state a claim. In the further alternative, the Court should compel Plaintiff to submit his claims to arbitration.

Dated: August 4, 2022

Respectfully submitted,

DHILLON LAW GROUP INC.
A CALIFORNIA PROFESSIONAL CORPORATION

By:     /s/Josiah Contarino
        JOSIAH CONTARINO

JOSIAH A. CONTARINO (3962013)
50 Park Place – Suite 1105
Newark, NJ 07102
973-298-1723
jcontarino@dhillonlaw.com

JOHN-PAUL S. DEOL
(admitted *pro hac vice*)
JESSE D. FRANKLIN-MURDOCK
(admitted *pro hac vice)*
Dhillon Law Group Inc.
177 Post Street, Suite 177
San Francisco, CA 94108
jpdeol@dhillonlaw.com
jfranklin-murdock@dhillonlaw.com
*Attorneys for Defendant*
*Diamond Foundry Inc.*