The Law Office of John F. Olsen, LLC
John F. Olsen
105 Grove Street, Suite 6
Montclair, New Jersey 07042
t. (973) 932-0474
f. (973) 453-8264

*Attorneys for Plaintiff Jorge Lopez-Henriquez*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE LOPEZ-HENRIQUEZ,<br><br>     Plaintiff,<br><br>   -v-<br><br>DIAMOND FOUNDRY, INC.,<br><br>     Defendant. | Civil Action No. 2:22-cv-4267<br><br>**Return Date:  September 6, 2022** |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, COMPEL ARBITRATION**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.  PRELIMINARY STATEMENT ................................................................................. 1

II. THIS COURT HAS SUBJECT MATTER JURISDICTION – THE SHARES
    IN DISPUTE ARE WORTH SIGNIFICANTLY MORE THAN $75,000.00 ........... 2

III. THE COMPLAINT DOES NOT ESTABLISH THAT THE
     STATUTE OF LIMITATIONS HAS RUN ............................................................... 4

A. The Legal Standard Applicable to Defendant's Rule 12(b)(6) Motion ..................... 4

B. The Allegations of the Complaint do not Establish that the
   Statute of Limitations has Expired ............................................................................ 5

IV. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD
    NOT BE DISMISSED ................................................................................................ 7

V.  THERE IS NO AGREEMENT TO ARBITRATE PLAINTIFF'S CLAIMS ............ 8

VI. LEAVE TO AMEND ............................................................................................... 10

VII. CONCLUSION ........................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page

Cases

*Abe v. AFCH, Inc.*, 2022 U.S. Dist. LEXIS 8995 (C.D. Cal. Jan. 18, 2022) .................................3

*Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388 (3d Cir. 2016) .................................3

*Blattman v. Siebel*, 2020 U.S. Dist. LEXIS 14583 (D. Del., Jan. 29, 2020) .................................3

*Cochran v. Cochran*, 56 Cal. App. 4th 1115 (2nd Dist. 1997) ......................................................5

*Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, 685 Fed. Appx. 161 (3d Cir. 2016)....................3, 4

*Dameron Hospital Assn. v. AAA Northern California*, 229 Cal. App. 4th 549 (3rd Dist. 2014) ....6

*Field Intelligence, Inc. v. Xylem Dewatering Sols.*, 2021 U.S. Dist. LEXIS 91859
(D.N.J. May 13, 2021)....................................................................................................................8

*Foman v. Davis,* 371 U.S. 178 (1962) .........................................................................................10

*Fried v. J.P. Morgan Chase & Co.*, 850 F.3d 590 (3d Cir. 2017) .................................................4

*Grey v. American Management Services*, 204 Cal. App. 4th 803 (2nd Dist. 2012) .......................9

*Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal. App. 4th 1 (1st Dist. 2015) ...........9, 10

*Kasdan, Simonds, McIntyre v. World Sav. & Loan Ass'n*, 317 F.3d 1064 (9th Cir. 2003) .............6

*Heyl & Patterson International, Inc. v. F. D. Rich Housing, Inc.*, 663 F.2d 419 (3d Cir. 1981)..10

*Pearson v. Valeant Pharms. Int'l*, Inc., 2017 U.S. Dist. LEXIS 209102 (D.N.J. Dec. 20, 2017) ..9

*Quantum Tech. Partners, IV v. Ploom, Inc.*, 2014 Del. Ch. LEXIS 78 (Feb. 25, 2014) .................3

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ...........................................................................4

*US LEC Communs., LLC v. Qwest Communs. Co.*, LLC, 2011 U.S. Dist. LEXIS 66652
(D.N.J. June 20, 2011)....................................................................................................................7

*Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163 (3d Cir. 1987) .............................................7

Rules

9 U.S.C. § 4 ....................................................................................................................................1

Fed. R. Civ. Proc. 12 ......................................................................................................................1

Fed. R. Civ. Proc. 15 ....................................................................................................................10

Plaintiff Jorge Lopez-Henriquez submits this brief in opposition to defendant's Rule 12(b)(1), 12(b)(6) and 9 U.S.C. § 4 Motion to Dismiss or, in the alternative, compel arbitration.

## I.

## PRELIMINARY STATEMENT

Plaintiff filed this action to obtain the shares in Diamond Foundry he earned as an employee.  The terms of the purchase and transfer of the shares are contained in a written Stock Purchase Agreement.  Complaint, ¶7, Ex. A.  In an email exchange between plaintiff and R. Martin Roscheisen, Mr. Roscheisen confirmed that plaintiff owned 6250 shares of Diamond Foundry stock:  "I'm hereby confirming again that you own 6,250 shares of DF Restricted Common Stock."  Complaint, ¶ 9.  Plaintiff has satisfied his obligations under the agreement and demanded transfer of the shares in June 2021 and July 2022.  Complaint, ¶¶ 11, 12.  Nevertheless, Diamond Foundry refused his requests and plaintiff filed this suit for breach of contract and a declaratory judgment.

Defendant now seeks to dismiss plaintiff's complaint on jurisdictional grounds, if that fails, defendant would like the Court to find that plaintiff has failed to state a claim for relief and, if that fails, defendant would like the Court to send this case to arbitration in Santa Clara County, California.

For the reasons discussed below, defendant's motion should be denied in its entirety.  If the Court grants plaintiff's motion to dismiss on jurisdictional or substantive grounds, plaintiff respectfully requests leave to file an amended complaint.

## II.

**THIS COURT HAS SUBJECT MATTER JURISDICTION – THE SHARES IN DISPUTE ARE WORTH SIGNIFICANTLY MORE THAN $75,000.00**

Defendant asks the Court to find that the matter in controversy does not meet the $75,000.00 threshold. In part, defendant's motion is based on its claim that the price specified in the Stock Purchase Agreement – $0.196195 per share – controls, making plaintiff's shares worth $1226.22. However, the purchase price in the stock purchase agreement has no relation to the actual value of the shares, which will be the measure of plaintiff's damages.[1] It is fair to say that, if this case was worth $1226.22, it would have been resolved a long time ago.

Plaintiff alleges in his complaint that the amount in controversy exceeds $75,000.00. Complaint, ¶ 3. Although the stock is not publicly traded, published reports concerning the value of the company and investments into the company lead to the conclusion that plaintiff's 6250 shares are worth more than $75,000.00. For example, in an article from the April 27, 2021, edition of the Financial Times reported that Diamond Foundry is worth nearly two billion dollars:

> Diamond Foundry has notched up a $1.8bn valuation after a $200m investment by Fidelity that the lab-grown diamond start-up will use to boost its output to compete with gemstone miners such as De Beers.

Henry Sanderson, "Diamond Foundry Valued at $1.8bn after $200m Fundraising," Financial Times, Apr. 27, 2021, Declaration of Jorge Lopez-Henriquez, Ex. A. In a profile of the company in the April 2017 issue of Inc. Magazine, the company's founders explain their business model and the article touts the fact that the company raised $100 million in investments. Liz Welch, "This Start-Up Has Raised $100 million to Sell You Lab Grown Diamonds," Inc. Magazine,

---

[1] The stock purchase agreement, in its Repurchase Provision, recognizes that the share price identified in the agreement is different from the market value of a share. Complaint, Ex. A, ¶ 3.

2

April 2017, Lopez-Henriquez Decl., Ex. B.  In an SEC filing, Diamond Foundry reported an exempt offering of securities in the amount of $199,999,992.00.  Lopez-Henriquez Decl., Ex. C.  Finally, in a pre-IPO "offering" created by Roobee, the right to purchase shares from existing shareholders after an IPO were trading at $19.90 per share.  Lopez-Henriquez Decl., Ex. D.  Based on the Roobee sales, plaintiff's shares are worth $124,375.00.

Based on the allegations of the complaint and the information provided above, this case should not be dismissed for failure to meet the jurisdictional threshold.  In the Third Circuit, "the sum claimed by the plaintiff controls" unless it "appear[s] to a legal certainty" that the plaintiff cannot recover that amount."  *Coulter v. Paul Laurence Dunbar Cmty. Ctr.*, 685 Fed. Appx. 161, 164, citing *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016), 835 F.3d at 395 (emphasis in original) (quotation marks omitted).  Giving the published value of the company – $1.8 billion – and the other evidence cited by plaintiff, this Court should find plaintiff has met the jurisdictional threshold.[2]

If the Court decides to grant defendant's motion challenging jurisdiction, plaintiff requests leave to amend his complaint as appropriate.  Additionally, if the motion challenging

---

[2] In footnote 2 of its brief, defendant references an IRS Section 409A valuation of its shares finding a value of $9.58 per share.  This valuation, which was not produced and is for a very specific purpose, does not create a "legal certainty" that the $75,000 threshold cannot be met by plaintiff.  Companies generally perform Section 409A valuations to determine the value of stock options, not the fair market value of its shares. See *Blattman v. Siebel*, 2020 U.S. Dist. LEXIS 14583, n.3 (D. Del., Jan. 29, 2020)("A 409A valuation is an appraisal of a company's shares of stock that is conducted to determine for tax purposes the value of stock options" citing 26 U.S.C.A. § 409A, I.R.C. § 409A); *Abe v. AFCH, Inc.*, 2022 U.S. Dist. LEXIS 8995, *3 (C.D. Cal. Jan. 18, 2022) ("The FRC Valuation had been performed to comply with Internal Revenue Code 409A and not for the specific purpose of valuing [plaintiff's] shares"); *Quantum Tech. Partners, IV v. Ploom, Inc.*, 2014 Del. Ch. LEXIS 78, *37 (Feb. 25, 2014) (crediting plaintiff's argument on the relevance of a 409A valuation – "its overall design is governed by its purpose — to establish a strike price for defendant's option grants — which renders the valuation within it not comparable to the value placed on the stock in an arms-length transaction").

3

jurisdiction is granted, the Court has no jurisdiction to decide the remaining aspects of defendant's motion.  *Coulter*, 685 Fed. Appx. At 164.

If the Court decides it has jurisdiction over this matter, it must determine the remaining aspects of defendant's motion.  As discussed below, defendant's motion should be denied in its entirety.

## III.

### THE COMPLAINT DOES NOT ESTABLISH THAT THE STATUTE OF LIMITATIONS HAS RUN

**A. The Legal Standard Applicable to Defendant's Rule 12(b)(6) Motion**

Plaintiff generally agrees with defendant's recitation of the legal standards applicable to Rule 12(b)(6) motions to dismiss.  However, in the Third Circuit, there is one important criteria that applies to motions to dismiss on statute of limitations grounds – the complaint's allegations must establish that the statute has run, otherwise the question of whether the statute of limitations has run is a question of fact:

> "only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"[*Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). However, "'<u>[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)</u>.'"*Id*. (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)).

*Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (emphasis added).  "Since the applicability of the statute of limitations usually involves questions of fact for the jury, if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Fried v. J.P. Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) (internal quotation marks and citations omitted).

4

## B. The Allegations of the Complaint do not Establish that the Statute of Limitations has Expired

Defendant misreads the complaint and the Stock Purchase Agreement to argue that the statute of limitations has expired. First, defendant argues that the breach of contract claim accrued at the closing and fixes a date of February 21, 2016 as the date of closing. However, two alternative closing dates were specified in the contract, February 21, 2016, or at a time mutually convenient for the parties. Complaint, ¶ 10; Complaint, Ex. A, Stock Purchase Agreement, Art. 2. The first date, February 21, 2016, is the date that the parties signed the Stock Purchase Agreement. Complaint, Ex. A. Under the terms of the agreement, plaintiff's shares did not begin vesting until February 24, 2016 and shares were scheduled to continue vesting every 30 days that plaintiff remained employed. Complaint, Ex. A, Stock Purchase Agreement, Art. 4(a). Since none of plaintiff's shares had vested on February 21, 2016, this date could not be the closing date for any of plaintiff's shares. Therefore, the closing date must be the second, later date mutually agreeable to the parties.

Second, in claiming an early breach, defendant ignores the provision that required delivery of vested shares. Article 4(b) requires the defendant to retain the shares until plaintiff requested delivery. Complaint, ¶ 10, Ex. A Art. 4(b). Plaintiff made his first request for delivery of his shares in June 2021 and his lawyer made a second request in May 2022. Both requests were denied. Complaint ¶¶ 11, 12. Upon the denial of the first request for delivery, the statute of limitations began to run. Under California law,[3] a claim for breach of contract does not accrue until the contract is breached. See *Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120 (2nd Dist. 1997) ("A cause of action for breach of contract accrues at the time of breach, which then starts

---

[3] Plaintiff does not dispute that the California substantive law governs the parties' rights under the Stock Purchase Agreement. Complaint, Ex. A, Article 9(h).

the limitations period running"). Under the terms of the Stock Purchase Agreement, neither party was required to perform any acts prior to plaintiff's first demand for shares in June 2021, so the contract could not have been breached before then.

Defendant argues that the plaintiff's claim must have accrued before he demanded his shares in 2021. This argument, however, finds no support in the contract. First, as discussed above, February 21, 2016 could not have been the parties' chosen closing date because none of plaintiff's shares had vested by that date. Second, the agreement states that Diamond Foundry was to retain the shares until demand for their delivery was made. So, even if the transaction closed without plaintiff's knowledge, there was no breach until he made a demand for his shares and that demand was rejected. Courts cannot insert terms into a contract that the parties did not include themselves. Under California law, the terms of the written contract control and here, there is no time limit for the closing to occur or the request for delivery of shares to be made. *See Dameron Hospital Assn. v. AAA Northern California*, 229 Cal. App. 4th 549, 569 (3rd Dist. 2014) ("Courts will not add a term about which a contract is silent") (citations omitted). Additionally, under California law, "ambiguous contract language must be construed against the drafter." *Kasdan, Simonds, McIntyre v. World Sav. & Loan Ass'n*, 317 F.3d 1064, 1070 (9th Cir. 2003). There are numerous reasons – many of them tax related – for an employee to delay taking delivery of stock from his employer and there is nothing in the Stock Purchase Agreement requiring delivery by a certain point in time.

Defendant's motion to dismiss on statute of limitations grounds should be denied because neither the complaint nor the agreement attached to the complaint contain facts establishing this defense. In fact, just the opposite is true. The allegations of the complaint show that the contract

6

was not breached and the statute of limitations did not begin to run until plaintiff demanded delivery of his shares.

## IV.

## PLAINTIFF'S DECLARATORY JUDGMENT CLAIM SHOULD NOT BE DISMISSED

Plaintiff has pled a valid Declaratory Judgment claim – there is a present dispute between the parties as to whether the terms of the Stock Purchase Agreement require Diamond Foundry deliver 6250 shares of its stock to plaintiff. As such, a valid claim has been asserted. See *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1170 (3d Cir. 1987) ("Before a federal court may grant a declaratory judgment, there must be a live dispute between the parties. There must be a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment")(citation omitted). Although the allegations of plaintiff's Declaratory Judgment Claim overlap the allegations of his Breach of Contract Claim the relief requested is different – delivery of shares versus damages. The allegations may be redundant, but the claims seek alternative relief. *US LEC Communs., LLC v. Qwest Communs. Co.*, LLC, 2011 U.S. Dist. LEXIS 66652, *9-10 (D.N.J. June 20, 2011)("Alternative pleading, which is permitted, allows a party to plead different theories of a claim when the relevant factual or legal issues differ, or they afford different relief"). To the extent the Court finds the claim is redundant, and not alternative, it should still survive defendant's motion: "In the Third Circuit, redundant pleadings will not be stricken unless the moving party can show some prejudice or confusion caused by the pleadings." *US LEC Communs*, at *11.

## V.

## THERE IS NO AGREEMENT TO ARBITRATE PLAINTIFF'S CLAIMS

Defendant seeks to enforce an arbitration provision in an Employment Agreement between Diamond Foundry and plaintiff.  The agreement is dated February 8, 2016 and does contain an arbitration provision that provides as follows:

> In the event of any dispute or claim relating to or arising out of our relationship, the termination of that relationship, or this agreement (including, but not limited to, any claims of wrongful termination, breach of contract or age, sex, race, disability or other discrimination or harassment), you and the Company agree that all such disputes shall be fully and finally resolved by binding arbitration conducted by the American Arbitration Association in Santa Clara County, California, with the arbitrator exercising all powers and remedies of a judge. By signing this agreement you and the Company waive your rights to have disputes tried by a judge or a jury. However, we agree that this arbitration provision shall not apply to any disputes or claims relating to or arising out of breach or alleged breach of your Proprietary Information Agreement or Consulting Agreement with the Company.

Roscheisen Decl., Ex. 1, p.1.  However, this arbitration provision does not cover claims arising under the Stock Purchase Agreement the parties signed.

The Stock Purchase Agreement is dated February 21, 2016 – 13 days after the Employment Agreement – and contains the following integration clause:

> **Integration**.  This Agreement, including all exhibits hereto, represents the entire agreement between the parties with respect to the purchase of the Shares by the Purchaser and supersedes and replaces any and all prior written or oral agreements regarding the subject matter of this Agreement including, but not limited to, any representations made during any interviews, relocation discussions or negotiations whether written or oral.

Complaint, Ex. A, Art. 9(i).  The Stock Purchase Agreement contains a choice of law provision, Article 9(h), but contains no arbitration clause.  However, the integration clause specifically states that "any and all prior agreements" between the parties are superseded.  Since the

8

arbitration provision in the Employment Agreement purports to cover "any dispute or claim relating to or arising out of our relationship, the termination of that relationship, or this agreement (including, but not limited to, any claims of wrongful termination, *breach of contract* or age, sex, race, disability or other discrimination or harassment)…" (emphasis added) it is an agreement between the parties superseded by the Stock Transfer Agreement.  As such, there is no agreement to arbitrate under New Jersey or California law.  See *Grey v. American Management Services*, 204 Cal. App. 4th 803, 807-809 (2nd Dist. 2012)(later employment agreement with more restrictive arbitration agreement superseded earlier, more expansive agreement so plaintiff was not required to arbitrate his statutory claims against employer); *Field Intelligence, Inc. v. Xylem Dewatering Sols.*, 2021 U.S. Dist. LEXIS 91859, *15-16 (D.N.J. May 13, 2021) (An arbitration clause may be modified or superseded by a later contract covering the same subject matter and containing an integration clause").

Cases such as *Pearson v. Valeant Pharms. Int'l*, Inc., 2017 U.S. Dist. LEXIS 209102 (D.N.J. Dec. 20, 2017) and *Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal. App. 4th 1 (1st Dist. 2015) are inapplicable here because, in those cases, the Courts found that the later agreements did not show an intent to override earlier agreements.  In *Pearson*, the earlier contract was an employment contract with an arbitration clause, the later contract was a termination agreement with a merger clause, but no arbitration clause.  The Court reasoned that, since the subject matter was different and there was no obvious intent to supersede the earlier contract's arbitration provision, the arbitration provision survived.  *Pearson*, at *17 ("The two contracts, when read together, do not deal with the exact same subject matter, nor are they 'so inconsistent that though not explicitly expressed, it was obviously the intent of the parties that the latter supersede the former'").

9

In *Jenks*, the agreements in question were also an employment agreement and a termination agreement and the Court found that the earlier agreement's arbitration clause governed claims for wrongful termination since the second contract did not expressly supersede the earlier contract. *Jenks*, 243 Cal. App. 4th at 25-26.

In this case, to the extent the arbitration clause in the Employment Agreement was intended to cover later disputes over stock purchase agreements it was superseded by the Stock Purchase Agreement. The language in the Stock Purchase Agreement is clear – all earlier agreements are superseded.

## VI.

## LEAVE TO AMEND

In this opposition to defendant's motion to dismiss, plaintiff has shown that he has satisfied the jurisdictional requirements of this Court, has sufficiently pled breach of contract and declaratory judgment claims and has shown that there is no agreement to arbitrate. However, if the Court disagrees and grants the defendant's motion, plaintiff respectfully requests leave to file a First Amended Complaint to address any deficiencies found by the Court. Leave to file an amended pleading should be freely given: "Fed.R.Civ.P. 15(a) requires that 'leave [to amend] shall be freely given when justice so requires.' *See Foman v. Davis,* 371 U.S. 178, 182 (1962). When a motion to dismiss is granted, 'the usual practice is to grant leave to amend the complaint.' 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed. 1989). The Third Circuit has held: "In the absence of substantial or undue prejudice, denial must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Heyl & Patterson*

*International, Inc. v. F. D. Rich Housing, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981). Defendant has not and cannot show bad faith, dilatory motive or undue or unexplained delay.

## VII.

## CONCLUSION

      For all of the foregoing reasons, plaintiff Jorge Lopez respectfully requests that the Court issue an order denying defendant's motion to dismiss or granting him leave to amend.

Date:  August 23, 2022                   Respectfully submitted,

/s/ *John F. Olsen*

John F. Olsen

THE LAW OFFICE OF JOHN F. OLSEN, LLC

John F. Olsen, Esq. (JO 8553)
105 Grove Street, Suite 6
Montclair, NJ 07042
Phone: (973) 932-0474
jolsen@jfolsenlaw.com
Attorneys for Plaintiff Jorge Lopez-Henriquez